UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM G. HARGROVE,

      Petitioner,


v.                                  Case No. 8:04-cv-828-T-17MSS


SECRETARY, DEPARTMENT OF CORRECTIONS,

      Respondent.

_____/


### ORDER


      This cause is before the Court on Petitioner William G. Hargrove's 28 U.S.C. § 2254 petition for writ of habeas corpus. Hargrove challenges his conviction for first degree murder entered by the Circuit Court for the Thirteenth Judicial Circuit, Hillsborough County, Florida.

### BACKGROUND

      On December 9, 1987, Hargrove was indicted in case no. 87-14825 for the first degree murder of Jerome Smith.  Hargrove was tried by jury February

29-March 3, 1989, and found guilty. The state trial court sentenced Hargrove to life imprisonment without possibility of parole for 25 years.

Hargrove appealed. The state district court of appeal per curiam affirmed the conviction and sentence. *Hargrove v. State*, 569 So. 2d 449 (Fla. 2d DCA 1990) [table].  In 1992,  Hargrove prosecuted a Rule 3.850 motion for post conviction relief that resulted in an order for a  new trial in 1994.  The State appealed the decision. However, on February 21, 1996, the state district court of appeal per curiam affirmed the state trial court's decision granting a new trial. *State v. Hargrove*, 670 So. 2d 952 (Fla. 2d DCA 1996) [table].

A second trial commenced on December 4, 1996, and ended the same day in a mistrial after the State's first witness offered testimony in contravention of a pretrial order in limine.  At a third trial on December 9-11, 1996, a jury found Hargrove guilty of first degree murder. The state trial court again sentenced Hargrove to life in prison without possibility of parole for 25 years.

Hargrove appealed, arguing that the state trial court erred by denying 1) his motion to dismiss based on his claim of double jeopardy; 2) his motion for judgment of acquittal; 3) his motion to strike the venire panel during voir dire; and 4) his request to present testimony of mental health experts.  On December 3, 1999, the state district court of appeal per curiam affirmed the conviction and sentence. *See Hargrove v. State*, 754 So. 2d 35 (Fla. 2d DCA 1999) [table]. Hargrove's motion for rehearing was denied January 21, 2000.  The mandate

2

issued February 18, 2000.

On February 22, 2001, Hargrove, through retained counsel, filed a state petition for writ of habeas corpus in which he alleged his appellate counsel rendered ineffective assistance.  Hargrove alleged that his appellate counsel was ineffective for not raising the issue of the state trial court's denial of Hargrove's requested special jury instructions on "heat of passion."  Hargrove also alleged that his appellate counsel was ineffective for failing to argue that the state trial court allowed the State to exercise a peremptory strike of an African-American venireman without an adequate race-neutral reason.

On June 13, 2001, the state district court of appeal denied his habeas corpus petition, without opinion.  *Hargrove v. State*, 790 So. 2d 416 (Fla. 2d DCA 2001) [table].

On February 23, 2001, Hargrove, through retained counsel, filed a Rule 3.850 motion for postconviction relief claiming that his counsel at the third trial was ineffective. On July 2, 2001, Hargrove, through counsel, filed a supplement in which he added another claim against his trial counsel.

In his initial rule 3.850 motion, Hargrove raised several grounds of ineffective assistance of trial counsel.  In ground one, which included eight sub-claims, Hargrove essentially argued that trial counsel was ineffective for conceding that the "heat of passion" defense was not a viable defense; for not arguing that the crime was committed in self-defense or by accident; and for failing to request a jury instruction regarding the justifiable use of deadly force.

In his second ground, Hargrove alleged trial counsel was ineffective because she did not investigate, prepare, and present a defense of insanity super-induced by intoxication.  In his third ground, Hargrove alleged trial counsel was ineffective for failing to request a competency evaluation and failing to argue Hargrove was incompetent.

In his fourth ground, Hargrove alleged trial counsel was ineffective for failing to preserve the issue that the trial court did not require the State to provide a sufficient race-neutral reason for striking three venire members.

The state trial court summarily denied ground three of Hargrove's rule 3.850 motion and directed the State to respond to the remaining grounds.  On May 2, 2002, Hargrove filed a motion for rehearing of the nonfinal order.  On June 6, 2002, the State filed a response to grounds one, two and four.  On June 20, 2002, the state trial court summarily denied grounds two and four and ordered an evidentiary hearing on ground one.  On June 28, 2002, the state trial court granted Hargrove's motion for rehearing and ordered the State to respond to ground three.  On July 24, 2002, the state trial court again summarily denied ground three.

On October 31, 2002 and December 5, 2002, the state trial court held an evidentiary hearing on Hargrove's ineffective assistance of counsel claims raised in ground one of the rule 3.850 motion. On January 13, 2002, the state trial court denied the rule 3.850 motion.

Hargrove appealed. On February 27, 2004, the state district court of

appeal per curiam affirmed the denial of Rule 3.850 relief. *Hargrove v. State*, 2004 Fla. App. LEXIS 2478 (Fla. 2d DCA Feb. 27, 2004) [table]. Hargrove's motion for rehearing was denied on April 6, 2004. The mandate issued May 6, 2004. Hargrove timely filed the present federal petition for writ of habeas corpus on April 16, 2004. Hargrove is represented by counsel.

## STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state court's resolutions of issues of law, including constitutional issues, must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involve an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." *Id. Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

### Ineffective Assistance of Counsel Standard

To prevail on a claim of ineffective assistance of counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a Petitioner to demonstrate that

counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component. Further, if a state court has already rejected an ineffective-assistance claim, a federal court may grant habeas relief only if the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003).

## DISCUSSION

A review of the record demonstrates that, for the following reasons, Hargrove's petition must be DENIED.

### Ground One

Hargrove argues that his state court trial attorney was ineffective because she: a) conceded in her opening statement the offense was not justifiable due to self-defense; b) conceded in her opening statement the offense was not excusable due to accident or misfortune in the heat of passion; c) conceded in closing argument the offense was not justifiable due to self-defense; d) conceded in closing argument the offense was not excusable due to accident or misfortune in the heat of passion; e) failed to present the complete defense of self-defense; f) failed to present the complete defense of accident or misfortune in the heat of passion; g) failed to present the defense that heat of passion

6

reduced the offense from first degree murder to manslaughter; and h) failed to request a jury instruction regarding the justifiable use of deadly force.

These allegations parallel the allegations in the state rule 3.850 motion. The state trial court denied the rule 3.850 motion in an order that reads, in pertinent part:

> When ineffective assistance is alleged, the burden is on the person seeking collateral relief to specifically allege the grounds for relief and establish whether the grounds resulted in prejudice. Effective assistance of counsel does not mean that a defendant must be afforded errorless counsel or that future developments in law must be anticipated. *Meeks v. State*, 382 So. 2d 673 (Fla. 1980). . .
>
> In ground 1, Defendant alleges that trial counsel was ineffective for conceding in the opening and closing statements that it was not a justifiable homicide or excusable due to heat of the passion, did not develop viable theories of defense, and failed to request jury instructions regarding the justifiable use of deadly force. The allegations in ground 1 are specifically related to three issues: (1) the failure to raise heat of passion to reduce the charge to manslaughter, (2) the failure to raise heat of passion as a complete defense, and (3) the failure to raise self-defense as a complete defense.
>
> During the October 31, 2002 hearing, testimony revealed that Jill Menadier, the Defendant's trial counsel was an experienced criminal attorney. (See October 31, 2002 Hearing Transcript, pages 41-42, attached). During the course of her representation of the Defendant on re-trial, Ms. Menadier actively communicated with the Defendant, met with him at least sixteen (16) times between June 19, 1996 and December 10, 1996, and

spent approximately ten (10) hours per week on the Defendant's case. (See October 31, 2002 Hearing Transcript, page 52, attached).

During his discussions with Ms. Menadier, the Defendant concentrated on attempting to get a deal for anything less than first degree murder. (See October 31, 2002 Hearing Transcript, attached). The Defendant was not concerned with having a felony conviction on his record, but was concerned about getting out of prison. (See October 31, 2002 Hearing Transcript, attached). Therefore, the Defendant attempted to obtain a deal from the State on several occasions. (See October 31, 2002 Hearing Transcript, Letters from Defendant, attached). The Defendant even provided assistance to the State Attorney's Office on other cases hoping to obtain a plea offer. (See October 31, 2002 Hearing Transcript, attached). According to Ms. Menadier, the entire strategy of the Defendant was to be found guilty of a lesser offense. (see October 31, 2002 Hearing Transcript, pages 60-66, attached).

With this understanding, the Defendant and Ms. Menadier discussed potential trial strategies. Ms. Menadier and the Defendant discussed, and rejected, the insanity defense, the Defendant's wife and not the Defendant was the actual assailant, and an alibi defense. (See October 31, 2002 Hearing Transcript, pages 60-66, attached). The Defendant and Ms. Menadier agreed that the best defense to pursue would be voluntary intoxication coupled with a quasi-diminished capacity defense. (See October 31, 2002 Hearing Transcript, pages 60-66, attached). The goal of this defense would be to lessen the charge from first degree murder to manslaughter. (See October 31, 2002 hearing Transcript, attached). The Defendant believed that a conviction of any charge other than first degree murder would result in his release from prison due to the amount of time he had already served. (See October 31, 2002 Hearing Transcript, pages 67-68, attached). Moreover, Ms. Menadier testified that it would have been difficult to raise the defense of self-defense because, due to

his conviction in the previous trial, the Defendant had elected not to testify in his re-trial. (See October 31, 2002 Hearing Transcript, attached).

The entire theory of the defense, agreed to by the Defendant, was that the gun fired accidentally during a struggle. (See October 31, 2002 Hearing Transcript, attached). Ms. Menadier was concerned about maintaining credibility with the jury and, therefore, rejected this potential defense. (See October 31, 2002 Hearing Transcript, attached).

With regard to the heat of passion defense as a complete defense, Ms. Menadier testified that she considered the defense, however, it was not appropriate based on the facts of the case. (See October 31, 2002 Hearing Transcript, pp. 71-73, attached). Specifically, Ms. Menadier testified that there were several factors that influenced this decision, including:

1. The fact that the Defendant and Ms. Hargrove were not married.

2. The fact that they were not living together.

3. The fact that this residence was not the Defendant's home.

4. The fact that the Defendant did not immediately confront the victim.

5. The fact that the Defendant, after observing the victim and ex-wife in bed, went back to his vehicle to arm himself with a gun.

6. The fact that the Defendant damaged the victim's motorcycle prior to entering the residence, and,

7. The fact that the Defendant, upon re-

9

> entering the residence with the gun,
> confronted the victim, yelled at him,
> fought with him, and then shot him.

(See October 31, 2002 Hearing Transcript, attached). Each of these factors led Ms. Menadier to the conclusion that the complete defense of heat of passion was not available.

Ms. Menadier also testified that she **did** attempt to present a heat of passion defense to reduce the charge from first degree murder to manslaughter. (See October 31, 2002 Hearing Transcript, attached). Ms. Menadier testified that she raised the argument in her closing argument to the judge during her JOA. (See October 31, 2002 Hearing Transcript, pp 74-75, attached). Moreover, Ms. Menadier attempted to get a special jury instruction that reflected this, however, her request was denied by the trial court. (See October 31, 2002 Hearing Transcript, pp. 75-76, attached). In addition, Ms. Menadier testified that it would have been difficult for her to establish a heat of passion defense due to the Defendant not testifying. (See October 31, 2002 Hearing Transcript, attached). However, even though the Defendant did not testify, she still attempted to present this defense. (See October 31, 2002 Hearing Transcript, attached).

During the October 31, 2002 hearing, the Defendant conceded that the decisions of Ms. Menadier were tactical. (See October 31, 2002 Hearing Transcript, p. 43, attached). T h e court finds, based on the testimony presented, that Ms. Menadier considered and rejected the defense of self-defense based on the facts and circumstances of this case. In addition, the court finds that Ms. Menadier considered and rejected the defense of heat of passion, as a complete defense. "Defense counsel's strategic choices do not constitute deficient conduct if alternative courses of action have been considered and rejected." *Lawrence v. State*, 27 Fla. L. Weekly S877 (Fla. 2002) *citing Shere v. State*, 742 So. 2d 215, 220 (Fla. 1999). Consequently, there was no deficient conduct by Ms. Menadier. As such, no relief is warranted as to

10

grounds 1a, 1b, 1c, 1d, 1e, 1f, and 1h.

With regard to a heat of passion defense to reduce the charge from first degree murder to manslaughter, the court finds that trial counsel was not ineffective. Trial counsel requested that a jury instruction be given consistent with this defense. (See Proposed Jury Instruction, attached). Ms. Menadier's request was denied by the trial court. After her request was denied, Ms. Menadier continued to argue to the jury regarding the Defendant's state of mind. (See October 31, 2002 Hearing Transcript, attached.) Although Ms. Menadier may not have referred to heat of passion during her closing argument, the court finds that this argument was presented to and rejected by the jury. Therefore, there was no deficient conduct and no prejudice with regard to this ground. As such, no relief is warranted as to ground 1g.

In denying Hargrove's Rule 3.850 motion, the state trial court relied on

*Strickland v. Washington.* Hargrove has not rebutted, with clear and convincing evidence, the factual findings of the state trial court. Therefore, they are presumed to be correct. Furthermore, the state courts' resolution of issues of law, including constitutional issues, were not "contrary to" clearly established precedent of the Supreme Court of the United States and were not an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). Hargrove has not demonstrated that the state courts' decisions were "objectively unreasonable." *Id. Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002). The Court finds the Respondent's arguments persuasive as set out in the

11

response to the petition.  Ground one does not warrant habeas corpus relief.

## Ground Two

Hargrove argues he was deprived of his Constitutional right to due process because the trial court refused to instruct the jury on his "heat of passion" defense theory.  Therefore, according to Hargrove, his trial was fundamentally unfair.  Hargrove was tried three times on the charge of first degree murder.  Nothing in his petition rises to the level of demonstrating that his third trial was fundamentally unfair.

Furthermore, ground two is procedurally barred because Hargrove did not raise a federal constitutional dimension regarding the jury instruction at trial and then on direct appeal.  Hargrove claims he satisfied the exhaustion requirement by raising his claim in his state petition for writ of habeas corpus. However, Hargrove's underlying claim can not be raised in a state habeas corpus petition under Florida's procedural rules governing such petitions. *E.g., Mills v. Dugger*, 574 So. 2d 63, 65 (Fla. 1990) ("[H]abeas corpus is not to be used 'for obtaining additional appeals of issues which were raised, or should

have been raised, on direct appeal or which were waived at trial or which could have . . . or have been, raised in' prior postconviction filings."); *see also, Roberts v. State*, (procedurally barred claims not properly recast as ineffective assistance of appellate counsel claims.)

Hargrove has not shown cause and prejudice to overcome the procedural bar and has not shown that a fundamental miscarriage of justice will result if this Court does not reach the merits of this claim.  Furthermore, Hargrove is barred by the state rules regarding the time for raising claims on direct appeal or in a collateral motion. Ground two does not warrant habeas corpus relief.

Ground Three

Hargrove alleges he was deprived of his Constitutional right to effective assistance of appellate counsel because his appellate attorney failed to appeal the state trial court's denial of jury instructions regarding heat of passion.

The standard of review for appellate counsel is the same as the standard of review for trial counsel.  *Duest v. Singletary*, 967 F.2d 472, 477 n.4 (11th Cir. 1992).  Thus, this claim falls under the *Strickland* test.

Under the deficiency prong, Hargrove does not show his appellate counsel was constitutionally required to advance a federal due process argument in order to be reasonably effective because effective counsel may "winnow out" weaker arguments even though they may be meritorious. *Jones v. Barnes*, 463 U.S. 745, 754 (1983).  While Hargrove contends his proposed instructions comported with Florida law, (Doc. No. 1 at pg. 23), the per curiam opinion denying his state petition effectively ended inquiry into whether the trial court was within its discretion to deny special "heat of passion" instructions based on an interpretation of state law.  Moreover, where a state court's adjudication of an ineffectiveness claim represents the resolution of an underlying issue, the Court owes a very high degree of deference to the determination.  *See Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984), *modified*, 731 F.2d 1486, *cert. denied*, 469 U.S. 956.

With regard to Hargrove's federal arguments, a habeas petitioner who seeks to overturn his conviction based on a claim of error in a jury instruction faces a significant burden.  Hargrove has not proven that "the ailing instruction by itself so infected the trial that the resulting conviction violates due process."

14

*Henderson v. Kibbe*, 431 U.S. 145 (1977).  On the contrary, one reasonably competent appellate advocate could have concluded the standard jury instruction on excusable homicide was adequate to instruct his jury on heat of passion in relation to excusable homicide.

Under the prejudice prong of *Strickland*, Hargrove cannot show prejudice because his defense did not hinge solely on the theory that he acted in the heat of passion.  Moreover, the jury had the option of convicting him of the lesser included terms of the offense ad chose not to.  Thus, there was no reasonable probability of prevailing on appeal had appellate counsel presented Hargrove's proposed instruction issue in state or federal terms.

Therefore, ground three does not warrant habeas corpus relief..

Ground Four

Hargrove argues he was denied his constitutional right to equal protection and due process because the trial court refused to require the State to establish an adequate race-neutral reason for the exercise of a peremptory strike against an African-American potential juror.

15

Ground four is procedurally barred on independent and adequate state procedural grounds because Hargrove did not preserve his federal claim and then raise the federal constitutional dimension thereof on direct appeal. Hargrove has not shown cause and prejudice to overcome the procedural default. Nor has he shown actual prejudice or that a fundamental miscarriage of justice will occur if this Court does not reach the merits of this claim. Hargrove cannot meet the cause standard to excuse default of his underlying substantive claim by alleging ineffective assistance of his trial or appellate counsel because Hargrove has not shown that either counsel was ineffective.

Ground four does not warrant habeas corpus relief.

## Grounds Five and Six

In ground five, Hargrove argues he was deprived of his Constitutional right to effective assistance of appellate counsel because his appellate attorney failed to appeal the trial court's refusal to require the State to establish an adequate race-neutral reason for the exercise of a peremptory strike against an African-American potential juror. In ground six, Hargrove alleges he was

deprived of his Constitutional right to effective assistance of trial counsel because counsel failed to preserve the issue for appeal.

Neither claim has merit under *Batson v. Kentucky*, 476 U.S. 79, 89 (1986).   In *Batson*, the Supreme Court held that a prosecutor's use of peremptory challenges to preclude blacks from serving on a petit jury based on their race was a violation of the Equal Protection Clause of the Fourteenth Amendment.   *Id.*   In conjunction with its holding, the Court established a framework for courts to use when evaluating *Batson* challenges to the state's use of peremptory strikes: defendant must make a prima facie case of discriminatory purpose on the part of the prosecution and, if the defendant has made a prima facie case, the prosecution must give a race-neutral reason for the challenge.   *Id.* at 96-97.

Here, the prosecutor explained that he struck Mr. Carson because "he was very zealous in his belief that drugs and alcohol strongly affect a person's mindset and they should definitely be considered in first degree prosecution." (Direct Appeal Record, 2D97-0236, V 6 T 187) In accepting the state's reason, the state trial court found there was a sufficient non-racial basis for the strike.

17

(V 6 T 188) Moreover, there is a presumption of correctness with regard to underlying jury selection issues. *See* U.S.C. §2254 (e) (1); *Purkett v. Elem.*, 514 U.S. 765 (1995) (state court determinations under *Batson* of whether peremptory strikes were motivated by group bias are presumed to be correct.

The state trial court was in the best position to assess the prosecutor's reasons and determine their genuineness.  Hargrove has not overcome the presumption of correctness of the state trial court's decision. Therefore, trial counsel was not ineffective for failing to preserve the issue and appellate counsel was not ineffective for failing to raise the issue on appeal because Petitioner would not have prevailed.

Grounds five and six do not warrant habeas corpus relief.

Grounds Seven and Eight

In ground seven, Hargrove argues he was denied his Constitutional right to the effective assistance of counsel because his trial attorney, Jill Menadier, Esquire, failed to investigate, prepare and present the defense of "insanity superinduced by intoxicants."  In ground eight, Hargrove contends he was

18

deprived of his Constitutional rights to due process and the effective assistance of counsel because: a) there was a substantial and legitimate doubt as to his competency at the time of his trial; and b) Ms. Menadier had knowledge that should have reasonably led her to believe Petitioner's mental state had deteriorated after the finding of competency, and Ms. Menadier failed to apprise the state trial court of those facts, failed to investigate whether Petitioner remained competent, and failed to move for a re-evaluation of the Petitioner's competency.

Both claims are procedurally barred in the entirety because Hargrove did not assert the claims with specificity on appeal of his 3.850 motion. Pursuant to state procedural rules, an issue is considered waived where an appellate brief is submitted without argument on an issue. *See*, *e.g., Shere v. State*, 742 So. 2d 215, 224 n. 6 (Fla. 1999). ("In a heading in his brief, Shere asserts that the trial court erred by summarily denying nineteen of the twenty-three claims raised in his 3.850 motion. However, for most of these claims, Shere did not present any argument or allege on what grounds the trial court erred in denying these claims. We find that these claims are insufficiently presented for review."); *see*

*also*, *Duest v. Dugger*, 555 So. 2d 549 (Fla. 1990) ("Merely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived").

Further, the state raised abandonment and addressed Hargrove's claims in its brief on his rule 3.850 motion and the State District Court of Appeals per curiam affirmed. *Hargrove v. State of Florida*, 873 So.2d 330 (Fla. 2d DCA 2004). Where the state has briefed both an applicable procedural bar and the merits with respect to a given point, and the appellate decision is silent on the point, there is a presumption that the state decision rests on the procedural default. *Bennett v. Fortner*, 863 F.2d 804 (11th Cir. 1989) ("This circuit to a point has presumed that when a procedural default is asserted on appeal and the state appellate court has not clearly indicated that in affirming it is reaching the merits, the state court's opinion is based on the procedural default."); *see also Alderman v. Zant*, 22 F.3d 1541, 1550 n. 10 (11th Cir. 1994) (collecting cases), *cert. denied*, 513 U.S. 1061 (1994).

Hargrove has not shown valid cause to excuse the default. Furthermore, Hargrove does not meet the prejudice or manifest injustice exceptions to lift the

independent and adequate state bars applicable to grounds seven and eight.

Alternatively, Hargrove has not shown his counsel was ineffective because his claims can be rejected under *Strickland*. With regard to ground seven, at least one reasonably competent attorney could have elected to forego the defense of insanity super-induced by intoxicants where the experts who evaluated Hargrove concluded he was not insane at the time of the murder.

With regard to ground eight, at least one reasonably competent attorney could have elected to forego an additional competency evaluation where the first evaluation yielded no evidence of incompetency; Hargrove actively participated in his defense; and the experts who evaluated Hargrove suggested that he attempted suicide to prevent a transfer within the Department of Corrections population hierarchy.

The competency standard for standing trial is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against him. *See Godinez v. Moran*, 509 U.S. 389, 396-397

(1993), citing *Dusky v. United States*, 362 U.S. 402 (per curiam); *Drope v. Missouri*, 420 U.S. 162, 171 (1975).

Hargrove's 3.850 motion provides no basis for concluding that counsel or the state trial court ignored facts that would raise a "bona fide doubt" regarding his competency to stand trial.  *See Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995).   Further, Hargrove has not, by clear and convincing evidence, pointed to objective facts that would generate legitimate doubt as to his competency at the time of retrial.

Moreover, under the prejudice prong of *Strickland*, Hargrove's 3.850 allegations did not present a sufficient basis to conclude the state court needed to conduct another hearing after experts had found him competent.

Lastly, in view of expert evaluations that concluded Hargrove was not insane at the time of the murder and of evidence showing Hargrove committed deliberate acts such as arming himself prior to entering the home, shooting the victim twice, and covering up the murder, it is objectively reasonable to conclude that there was not a reasonable probability of success had trial counsel

pursued an insanity super-induced by intoxication defense.

Grounds seven and eight do not warrant habeas corpus relief.

Accordingly, the Court orders:

That Hargrove's petition is denied, with prejudice. The Clerk is directed to enter judgment against Hargrove and to close this case.

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322,

335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).

Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability,

he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on July 28, 2006.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record